BROWN,
concurring in part and concurring in the judgment.
I join the court’s opinion to the extent it authorizes Rule 36 clarifications. I also agree the determination of when Ms. Hughes’ debt became due may affect the validity of the Department of Justice’s referral to the Treasury Offset Program. See United States v. Martinez, 812 F.3d 1200, 1201-02, 1206, 2015 WL 9009626, at *1, *6 (10th Cir.2015) (“[T]he statutory scheme directs the district court, not the government, to direct how and when the defendant is to satisfy a restitution order. ... The government [can]not usurp the district court’s role by enforcing payments not yet due under the court-ordered payment schedule.”).
However, I do not join the Court’s discussion of the viability of an APA challenge, in a criminal case, of the TOP program’s alleged overreach. Too many questions remain about the interplay between TOP and several criminal restitution statutes, about whether Ms. Hughes received adequate notice, and about whether an administrative challenge to a TOP referral can be waived. These issues were not squarely presented nor were they sufficiently briefed to permit any confident assessment.
I am, nevertheless, completely in sympathy with the Court’s bold response. This is a case in which the government behaved badly and — even when the unpalatable implications of their actions became evident — exhibited neither remorse nor gallantry. Politics is a form of violence; and, in democracies, the monopoly on force is accorded to the electoral victors. Bureaucratic institutions are justified by their efficiency. That efficiency is enhanced because they may invoke the threat of force to deter non-compliance. Even so, an expectation remains that the resort to force will be neither gratuitous nor grossly disproportionate.
Ms. Hughes committed a crime. She acknowledged her culpability and accepted responsibility. She was neither the instigator of the fraudulent scheme ' nor its main beneficiary. That dubious distinction went to her corporate employer — Black-hawk. Ms. Hughes, who had lost her main source of income and was on the verge of having her home foreclosed, nevertheless began making her $50 a month payments. But DOJ wasted no time referring her alleged debt to the TOP program which immediately scooped up an $11,000 tax refund — about the only cash available to Ms. Hughes. Paying off this $442,000 debt at $50 per month would take nearly 740 years; seizure of her tax refund may have reduced the reckoning by about 20 years. If the referral stands, Ms. Hughes’ future tax refunds and even her Social Security payments may also be seized by the government in satisfaction of her resti-tutionary debt. The point is, no matter how much suffering the government inflicts on Ms. Hughes, the Department will *1012 never recover the full amount it is allegedly owed. Yet there is no evidence the government ever sought to criminally prosecute Blackhawk — the most culpable party — a corporation that, so far as this record shows, has yet to pay a cent. There is something very wrong with this picture — so wrong Stevie Wonder could see the flaw from a phone booth in Chicago. The fact that the government cannot is deeply disturbing.